UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| BARBARA STURGIS,<br><br>    Plaintiff,<br><br>  v.<br><br>R & L CARRIERS, INC.,<br>R & L TRANSFER, INC., and<br>GREENWOOD MOTOR LINES, INC.,<br><br>    Defendants. | CAUSE NO. 3:19-CV-440 DRL-MGG |

OPINION & ORDER

This case arises from a tragic trucking accident on Interstate 94 that resulted in a gentleman's death. Barbara Sturgis filed this wrongful death action, individually and as administrator of her late husband's estate, seeking in part damages for his heirs at law—one adult biological son and two adopted adult children. The trucking companies collectively filed a partial summary judgment motion saying these three adult children were not the decedent's "dependents" entitled to recover under Indiana's Wrongful Death Act. The court now grants the motion.

BACKGROUND

Early the morning of February 16, 2018, David Sturgis was operating a semi-tractor trailer and heading westbound on Interstate 94 in LaPorte County, Indiana. His vehicle collided with a detached trailer on the right shoulder of the highway, resulting in his death. The trailer had become detached from a semi tractor-trailer driving ahead of Mr. Sturgis.

After his passing, Barbara Sturgis filed this wrongful death action under Indiana law. The parties stipulated that the trucking companies were liable, leaving then only the question of damages. Ms. Sturgis seeks damages under Indiana's Wrongful Death Act for herself and for Mr. Sturgis' three children, Natalie Lepkowski, Phillip Druszczak, and Nathan Sturgis. Although not named parties, the

three adult children sought, through the nature of Ms. Sturgis' suit, recovery for lost love, companionship, guidance, training, and financial support.

Mr. Sturgis adopted Natalie Lepkowski when she was around 23 years old.[1] At the time of her deposition, Natalie lived in Minnesota with her two children and ex-husband (the Sturgises lived in Wisconsin). She was married at the time of her father's death. She owned a Pilates studio on a full-time basis for many years. Natalie said Mr. Sturgis provided her financial support when he was alive, but she wasn't "fully dependent" on him. His support consisted of "varied" assistance with Natalie's older daughter's private school tuition during her three middle school years. The Sturgises would provide "whatever [Natalie] was having a hard time covering." Without their help, Natalie's daughter probably would have had to attend public school. Natalie said she didn't receive any assistance the year before her father's death (other than what she would consider a gift).

The Sturgises adopted Phillip Druszczak when he was 23 years old. At the time of his deposition, Phillip testified that he lived in a rental house in Minnesota with his son. Before he separated from his wife in December 2019, Phillip lived with his wife and son in a different home that they had owned for four or five years. Phillip said he still owns the house. Before his separation, Phillip and his wife financially supported their own household. Phillip was a building engineer for the YMCA for about six years (until his layoff last year due to the COVID-19 pandemic). In 2017, the year before his father's death, Phillip and his wife had three vehicles, including a Cadillac CTS. Before his father died, the Sturgises helped Phillip and his wife pay household bills when "unexpected life problems" would "pop up." This assistance wasn't on a "set schedule" but was "always" available. The financial support included circumstances like a car breaking down or needing new tires or an unusually high air

---

[1] For readability, the court refers to the three adult children only by their first name rather than using the court's customary salutations of "Mr." and "Ms." and their last name, asking their pardon for what may seem a too familiar reference in aid of the opinion's clarity.

conditioning or electric bill. The Sturgises helped him financially "only when the need arose." Mr. Sturgis also helped fix Phillip's cars and work on his house.

Mr. Sturgis was the biological father of Nathan Sturgis. At the time of his deposition, Nathan worked full-time for Harley-Davidson. Before that job, he had "always worked," including a previous job at Slumberland. His wife also worked full-time as a nurse. Mr. Sturgis helped Nathan when he needed money, but it was "not on a month-to-month basis." Instead, Nathan "always maintained [his] own bills," and Mr. Sturgis "just helped when extra stuff came up." The Sturgises bought a mobile home for Nathan and his family about ten years ago and allowed Nathan's family to stay with them while the mobile home was being readied. About two years later, Mr. Sturgis purchased new appliances for Nathan and helped with maintenance when Nathan's family purchased a new home and was short on money. Nathan said Mr. Sturgis "always helped [Nathan's family]," doing things like buying them new tires, "whether [they] needed them or not." That said, Nathan was able to care for his children and his wife with his income. He and his wife even took in two foster children. Nathan said he had "no problem paying [his] own bills," had "just bought a several hundred thousand dollar house," and "really [hadn't] needed [Mr. Sturgis'] help." Nathan said he has six cars, including an old Camaro.

## STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must present the court with evidence on which a reasonable jury could rely to find in her favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). The court must deny a summary judgment motion when there is admissible evidence that creates a genuine issue of material fact—a triable issue. *Luster v. Ill. Dept. of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011).

The court "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Heochst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Instead, the

"court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Id.* The court must construe all facts in the light most favorable to the non-moving party, view all reasonable inferences in that party's favor, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491-92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

## DISCUSSION

Under Indiana's Wrongful Death Act, "dependent children" or "dependent next of kin" may recover damages that remain after the payment of medical and other related expenses. Ind. Code § 34-23-1-1. Though the statute leaves "dependent children" and "dependent next of kin" undefined, a child seeking recovery under the act must prove dependency by showing his or her need for support and the decedent's actual contribution toward that need. *See TRW Vehicle Safety Sys. v. Moore*, 936 N.E.2d 201, 223 (Ind. 2010); *New York Cent. R.R. Co. v. Johnson*, 127 N.E.2d 603, 607 (Ind. 1955); *Terry v. Stephens*, 921 N.E.2d 516, 520 (Ind. Ct. App. 2010).

A child need not establish total dependency. Partial dependency suffices. *Est. of Sears ex rel. Sears v. Griffin*, 771 N.E.2d 1136, 1139 (Ind. 2002); *Deaconess Hosp., Inc. v. Gruber*, 791 N.E.2d 841, 846 (Ind. Ct. App. 2003). The child must have a necessitous want, and the decedent must have recognized that need and provided actual support such as to create a "reasonable expectation of support" or "some reasonable claim to support from [the] decedent" to recover under the Wrongful Death Act. *Wolf v. Boren*, 685 N.E.2d 86, 88 (Ind. Ct. App. 1997) (quoting *Kirkpatrick v. Bowyer*, 169 N.E.2d 409, 412 (Ind. Ct. App. 1960)). Previous occasional or irregular support won't create this reasonable claim. *See id.* "Payments for board, lodging or other accommodations, mere gifts, donations or acts of generosity" standing alone also won't establish dependency. *New York Cent.*, 127 N.E.2d at 607.

"Pecuniary loss is the foundation of [a] wrongful death action." *Est. of Sears*, 771 N.E.2d at 1139 (quoting *Luider v. Skaggs*, 693 N.E.2d 593, 596 (Ind. Ct. App. 1998)); *see also Terry*, 921 N.E.2d at

4

520. This pecuniary loss may come from the decedent's regular contributions of "money, services, or other material benefits." *Est. of Sears*, 771 N.E.2d at 1139; *see, e.g.*, *New York Cent.*, 127 N.E.2d at 607 (mother of 29-year-old decedent was a dependent when the decedent, weekly or bimonthly, gave her money to pay for groceries, fuel, clothes, insurance, utilities, medical bills, and to make down payment on a home); *Lustick v. Hall*, 403 N.E.2d 1128, 1132 (Ind. Ct. App. 1980) (jury could have found that minor children were dependents when decedent mother provided all domestic services for them); *Pucalik v. Holiday Inns, Inc.*, 777 F.2d 359, 364 (7th Cir. 1985) (sustaining jury verdict for a 16-year-old dependent son when the decedent provided him $40 each week and paid his tuition).

That said, the decedent's support must be "more than just a service or benefit to which the claimed dependent had become accustomed," and any services provided to a child "must go beyond merely helping other family members, even those who have relied on that assistance." *Est. of Sears*, 771 N.E.2d at 1139; *see, e.g.*, *Chamberlain v. Parks*, 692 N.E.2d 1380, 1381, 1384-85 (Ind. Ct. App. 1998) (retired mother wasn't a dependent though her son helped her in and out of chairs, drove her to doctor appointments, carried groceries, helped her husband with lawn care and snow removal, and performed other household tasks because his services were gifts or acts of generosity); *Koger v. Reid*, 417 N.E.2d 1142, 1143-45 (Ind. Ct. App. 1981) (rejecting claim that father and younger brothers were dependents of 17-year-old decedent who took over household maintenance chores after her mother died and chauffeured brothers to school activities and church).

One additional point about the law merits mention. Ms. Sturgis argues that the court "must also look to the emotional support provided by the decedent" to her children, citing *Necessary v. Inter-State Towing*, 697 N.E.2d 73, 78 (Ind. Ct. App. 1998) (ECF 96 at 5). She argues that dependency may be adjudged by love, affection, and care too. This isn't the law, though. The jury may assess these emotional contributions after the child has been established a dependent, but not to establish dependency in the first instance. *See Est. of Sears*, 771 N.E.2d at 1140 ("We find no cases establishing

5

dependency for purposes of the [act] based on purely emotional support"); *Terry*, 921 N.E.2d at 520 ("provision of love, care, and affection, alone, is *not* sufficient to establish dependent status to begin with"); *Deaconess*, 791 N.E.2d at 847-48 (calling *Necessary*'s statement *dicta* and holding that there is "no support for [a child's] assertion that dependency can be established by love, affection, or care").

With these standards in mind, the court turns to the children here. Each person was an adult who had a career. *See Est. of Miller v. City of Hammond*, 691 N.E.2d 1310, 1313 (Ind. Ct. App. 1998), *superseded by statute on other grounds*, *McCabe v. Comm'r, Ind. Dept. of Ins.*, 930 N.E.2d 1202, 1206-07 (Ind. Ct. App. 2010), *vacated on other grounds*, 949 N.E.2d 816, 820-21 (Ind. 2011) ("[plaintiffs] are both able-bodied individuals who maintain full-time employment"); *Deaconess*, 791 N.E.2d at 846-47 (holding that the plaintiff was able-bodied and self-sufficient). Each child was capable of financially providing for his or her family. Not to diminish the importance of Mr. Sturgis to his children but, on this record, his pecuniary support and services were gifts or acts of generosity inherent in most loving parent-child relationships rather than the regular patronage required under the law to establish dependency under Indiana's Wrongful Death Act. *See Franciscan ACO, Inc. v. Newman*, 154 N.E.3d 841, 849 (Ind. Ct. App. 2020). He was a caring father and jack-of-all-trades who helped when the cars broke down, when the basement flooded, when the septic broke, and when houses needed upkeep through painting, gardening, or carpentry. Still, according to undisputed testimony, his contributions were "varied" or "intermittent" or occasioned by circumstances that "popped up" or often generous but unnecessary gifts. Even Ms. Sturgis' proposed damages expert disregards these adults as dependents; and, though this view doesn't decide the question, it seems nonetheless telling. These adults had "the means to maintain an independent household." *Id.*

For instance, Natalie owns and operates a Pilates studio on a full-time basis, and has for several years. In her words, she received "relatively little support" from Mr. Sturgis in the year before his death. Though overall Ms. Sturgis says the Sturgises helped Natalie a "little more because she was a

6

single mom," she wasn't financially dependent on Mr. Sturgis or in certain need. To be sure, he provided some tuition assistance for her daughter's private education. Even were the court to construe private school in lieu of public education as a need rather than a mere expectation, her father's tuition support was "varied"—a stopgap measure for when Natalie had trouble covering every expense. *See, e.g.*, *Est. of Miller*, 691 N.E.2d at 1313 (parents of a young adult weren't dependents, though he partially supported them through his work for the family business to turn a profit, because this support was an expectation, not a need); *see also New York Cent.*, 127 N.E.2d at 607 ("[p]ayments for board, lodging or other accommodations, mere gifts, donations or acts of generosity" don't alone establish dependency). His kindness was no doubt appreciated by Natalie, but his assistance was in the vein of occasional gifts, not regular support. *See Wolf*, 685 N.E.2d at 88 ("the mere fact that [the] deceased occasionally contributed to the support of the beneficiary in an irregular way" isn't enough). Rather than being in need or receiving regular support as a dependent, Natalie had the "means to maintain an independent household." *Franciscan*, 154 N.E.3d at 849.

Phillip also was financially independent of his father. At the time of his father's death, Phillip was employed as a building engineer at the YMCA, a position he held for years. He lived with his then-wife and son in a home that he owned (and still owns), and he testified that they were able to financially support their own household. Phillip and his wife had three vehicles, including a Cadillac CTS. On this record, no reasonable jury could find that he had a "need or necessity of support" to call him a dependent. *Terry*, 921 N.E.2d at 520. The record also lacks sufficient evidence of regular contributions. His father's assistance, while again no doubt important to Phillip, wasn't on a "set schedule" and instead came in response to "unexpected life problems" that would "pop up." Mr. Sturgis' financial assistance to Phillip was through gifts and acts of generosity "common in a close parent-child relationship." *Franciscan*, 154 N.E.3d at 849.

Nathan likewise was independent. He "always worked" (previously at Slumberland, then at Harley-Davidson), and his wife was a full-time nurse. He testified that he was able to care for his family with his income and even cared for two additional children as a foster parent. Nathan had "no problem" paying his bills and purchased a "several hundred thousand dollar house" and six different cars. According to Nathan, his family "really [hadn't] needed [Mr. Sturgis'] help." On this record, no reasonable jury could say Nathan had a necessitous want or received regular pecuniary assistance toward that need to establish dependency under Indiana law. *See Terry*, 921 N.E.2d at 520.

## CONCLUSION

On this record, no reasonable jury could find that Natalie Lepkowski, Phillip Druszczak, or Nathan Sturgis were the decedent's "dependent children" or "dependent next of kin" as defined under Indiana's Wrongful Death Act. Accordingly, the court GRANTS the defendants' motion for partial summary judgment on the issue of dependency (ECF 80).

SO ORDERED.

March 2, 2021                             *s/ Damon R. Leichty*
                                          Judge, United States District Court